IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Jomer Hill, #264230, | ) | C/A No. 2:16-cv-00483-JMC-MGB |
| | ) | |
| Petitioner, | ) | |
| v. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Warden Larry Cartledge, | ) | |
| | ) | |
| Respondent. | ) | |
| _____ | ) | |

The Petitioner, a state prisoner appearing *pro se*, seeks habeas relief pursuant to 28

U.S.C. § 2254.  This matter is before the court on Respondent's Motion for Summary Judgment.

(Dkt. No. 22; *see also* Dkt. No. 21.)  Pursuant to the provisions of Title 28, United States Code,

Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this Magistrate Judge is authorized

to review the instant petition for relief and submit findings and recommendations to the District

Court. For the reasons stated herein, the undersigned recommends that the Respondent's Motion

for Summary Judgment (Dkt. No. 22) be granted.

The Petitioner filed the instant action on February 16, 2016. (Dkt. No. 1.) On or about

March 16, 2016, Petitioner filed a Motion for Release of $3,000 for Attorney. (Dkt. No. 9.) On

June 23, 2016, while Petitioner's motion was pending, Respondent filed a Motion for Summary

Judgment. (Dkt. No. 22; *see also* Dkt. No. 21.) By order filed June 24, 2016, pursuant to

*Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Petitioner was advised of the summary

judgment procedure and the possible consequences if he failed to adequately respond to the

motion. (Dkt. No. 23.) On October 3, 2016, the undersigned issued an Order denying Petitioner's

Motion for Release of $3,000 for Attorney. (Dkt. No. 29.) On or about November 10, 2016,

Petitioner filed a Response in Opposition to the Motion for Summary Judgment; he subsequently supplemented that Response. (*See* Dkt. No. 38; Dkt. No. 40.)

## PROCEDURAL HISTORY

Petitioner, Jomer Hill, #264230, is presently confined in the Kershaw Correctional Institution, of the South Carolina Department of Corrections (SCDC), as the result of his conviction and sentence in Greenville County. The Greenville County Grand Jury indicted Petitioner in September of 2005 for two counts of murder. (Dkt. No. 21-7 at 128-129, 131-132.)

Larry Cooke, Esq., represented the Petitioner in his trial.  The Petitioner had a motions hearing on April 28, 2006, and was tried by a jury on May 1-5, 2006, on both charges before the Honorable G. Edward Welmaker, South Carolina Circuit Court Judge. (Dkt. Nos. 21-1; 21-2; 21-3; 21-4; 21-5; 21-6 at 1-168.)  The jury found the Petitioner guilty of murder on both counts. (Dkt. No. 21-6 at 154-55.)  Judge Welmaker sentenced Petitioner to fifty (50) years of incarceration on each charge to be served concurrently. (Dkt. No. 21-6 at 166.)

On appeal, the Petitioner was represented by Robert M. Dudek, Appellate Defender with the South Carolina Commission on Indigent Defense. (Dkt. No. 21-6 at 169.) Mr. Dudek filed an Initial Brief in the South Carolina Court of Appeals on September 17, 2007, and a Final Brief on May 5, 2008. (*Id.*; 21-8.)  Appellate counsel raised the following three issues:

> 1. Whether the court erred by allowing state's witness Tim Paden to selectively invoke his Fifth Amendment right against self-incrimination during cross-examination since Paden admitted his attorney had informed him he could possibly get his sentence reduced by testifying against appellant, and Paden did not make a blanket invocation of his right against self-incrimination and his selective invocation of the right not to testify on cross-examination denied appellant his right to confront and cross-examine the witnesses against him?
>
> 2. Whether the court erred by refusing to instruct the jury that if a witness takes the Fifth Amendment the jury may infer the answer would be adverse, since Paden was not on trial, he selectively invoked the Fifth Amendment, he had pled guilty to conspiracy and cocaine charges in federal court, and had refused to

answer questions relevant to this case, since Paden was not entitled to the usual protections of the Fifth Amendment as a witness?

3.Whether the court erred by refusing to grant a mistrial where the solicitor commented upon appellant's failure to offer a defense or to testify, and asked the jury why 'isn't anybody else in here with him' during his closing argument, since, in context, this was a direct comment on appellant's "failure" to rebut the state's case against him?

(Dkt. No. 21-8 at 2.) The State filed its Final Brief of Respondent on March 5, 2008. (Dkt. Nos. 21-6 at 199-218; 21-7 at 7-17.) Oral arguments were held on January 8, 2009, before the South Carolina Court of Appeals. The Court of Appeals affirmed Petitioner's convictions by published opinion issued February 24, 2009.[1] (Dkt. No. 27-7 at 20-24.) The Petitioner and the State filed motions for rehearing, which were denied by the Court of Appeals on May 5, 2009. (*Id.* at 36-37.) Upon expiration of the time to seek further review from the Supreme Court of South Carolina, the Court of Appeals issued the remittitur on June 10, 2009.[2] (Dkt. No. 21-9.)

The Petitioner filed an Application for Post-Conviction Relief[3] ("PCR") in the Court of Common Pleas for Greenville County on May 25, 2010, (Dkt. No 21-7 at 42-48), and raised the following claims (verbatim):

1. Trial counsel was Ineffective for failure to object to Audio Recording under South Carolina Code of Law § 17-30-80;

---

[1] Published as *State v. Hill*, 382 S.C. 360, 675 S.E.2d 764 (Ct. App. 2009).

[2] Under state rules, an appellant has thirty (30) days after the denial of his petition for rehearing in which to timely serve and file a petition for writ of certiorari to review a Court of Appeals opinion. Rule 242 (c), *South Carolina Appellate Court Rules*. In this case, a petition would have been due to be filed in the Supreme Court of South Carolina on or before June 4, 2009. By document dated June 11, 2009, filed June 15, 2009 in the Supreme Court of South Carolina, Petitioner, appearing *pro se*, attempted to give notice of his intent to appeal the Court of Appeals' decision. (Dkt. No. 21-7 at 38.) On June 18, 2009, the Supreme Court of South Carolina dismissed the notice for lack of jurisdiction. (*Id.* at 40-41.)

[3] Additionally, on August 10, 2010, Petitioner filed a *pro se* petition for a Writ of Mandamus in the Court of Common Pleas for Greenville County. Petitioner sought the production of certain records of the grand jury which had indicted him. The petition was denied and dismissed by the Honorable Ed Miller on October 7, 2010. No appeal was taken from this decision. (Dkt. Nos. 21-17; 21-18; 21-19.)

    2. Trial counsel was ineffective for failing to object to Perjury testimony and Prosecutorial Misconduct;

    3. Ineffective assistance of Appellate counsel in violation of 6th Amendment for failing to raise Applicant direct verdict on appeal;

    4. State failed to meet it's burden of Proof concerning the element of Malice in violation of the 14th Amendment Guarantee of Due Process of Law;

    5. The Applicant is entitled to Post-conviction Relief under the Miscarriage of Justice Standard and Actual Innocence and Legal Innocence.

(*Id.* at 52-67.)

The State made its return to Petitioner's PCR application on September 14, 2010. (Dkt. No. 21-7 at 70-73.) Rodney Richey, Esq. represented Petitioner in the action. PCR counsel amended the PCR application on October 18, 2011. (*Id.* at 75-78.) An evidentiary hearing on the allegations was held March 1, 2012, before the Honorable D. Garrison Hill. (*Id.* at 80-116.)  At the conclusion of the hearing, Judge Hill took the matter under advisement. By Order dated and filed June 12, 2012, Judge Hill denied relief and dismissed the application. (*Id.* at 117-126.) Petitioner appealed the denial of relief.

Appellate Defender Susan B. Hackett of the South Carolina Commission on Indigent Defense, Division of Appellate Defense, represented Petitioner on appeal. PCR appellate counsel filed a Petition for a Writ of Certiorari in the Supreme Court of South Carolina on February 8, 2013, and raised the following issue:

    Appellate counsel's failure to raise the issue of whether the trial judge erred in denying the motion for directed verdict where the evidence against Petitioner consisted primarily of his alleged confessions to two third parties violated Petitioner's Sixth Amendment right to effective assistance of appellate counsel.

(Dkt. No. 21-10 at 3.)

The State filed its return to the petition on April 26, 2013. (Dkt. No.21-11.) The case was thereafter transferred to the South Carolina Court of Appeals. See Rule 243(l), *South Carolina*

*Appellate Court Rules* ("The Supreme Court may transfer a case filed under this rule [governing certiorari review of post-conviction relief actions] to the Court of Appeals"). On August 22, 2014, the Court of Appeals granted the petition for review and ordered additional briefing. (Dkt. No. 21-12.)

Petitioner filed his Brief of Petitioner on September 17, 2014, (Dkt. No. 21-13), and the State filed its Brief of Respondent on December 8, 2014, (Dkt. No. 21-14). The South Carolina Court of Appeals affirmed the decision of the PCR judge by published opinion[4] issued February 10, 2016. (Dkt. No. 21-15.)  No appeal was taken to the Supreme Court of South Carolina and the Court of Appeals issued the remittitur on March 2, 2016. (Dkt. No. 21-16.)

## GROUNDS FOR HABEAS RELIEF

Petitioner filed the instant habeas petition (Dkt. No. 1) on February 17, 2016, wherein he raised the following grounds for review (verbatim):

**GROUND ONE**: 4th Amendment violation and violation of statutory law § 17-30-80 for failure to get an authorized court order dealing with this type of investigation.

**Supporting facts:** The lead investigator Dan Fuller fail [sic] to get a court order that authorized the wiring of the state star witness Tim Paden in violation of statute 17-30-80. The trial court record clearly show [sic] that Detective Fuller repeated the act on three different occurrences.

**GROUND TWO**: 5th, 14th Amendment violations of due process and violation of statutory law § 16-9-10(a)(1)

**Supporting facts:** Numerous of the state witnesses were allowed to commit perjury. The trial record will clearly show the that [sic] Solicitor Allen Fretwell was aware of this type of behavior [sic] was going to take place do [sic] to the fact he sat down with the witnesses and went over their prior statement to law enforcement, however, Mr. Fretwell did nothing when the witnesses testify [sic] to something different at trial.

**GROUND THREE**: 5th, 14th Amendment violation of due process

---

[4] Published as *Hill v. State*, 415 S.C. 421, 782 S.E.2d 414 (Ct. App. 2016).

**Supporting facts:** I am Actual Innocence [sic] and Legal Innocence [sic] of this crime. The record will clearly show that there is no direct or substantial evidence linking me to this crime and the evidence that was allowed in was tainted evidence due to the fact Detective Dan Fuller failure to get an [sic] court order authorizing that form of investigation dealing with the wiring of the state star witness.

(Dkt. No. 1.)

## FACTS PRESENTED AT TRIAL

The Court of Appeals ably summarized the facts of this case as follows in Petitioner's

direct appeal:

Hill was convicted and sentenced to fifty years' imprisonment for the murders of Ken Goldsmith and Trey Brown in December of 2000. [N]umerous witnesses … testified to a drug-selling operation in which Trey Brown and Hill sold drugs for a man named Mont Brown. The victims were discovered shot in a liquor house[5] frequented by all of the aforementioned parties.

Witnesses observed Hill and Mont Brown having a serious private discussion at the liquor house the day before the murders. Witnesses also testified Trey Brown had a confrontation with Mont Brown the night before the murder regarding the division of profits from drugs Trey had sold.

Antone Jones testified he sold drugs for Mont Brown and as a member of the organization you were responsible for any other members you brought into the business. Jones stated Mont Brown had instructed him to kill his own cousin when the cousin was arrested. Jones testified Hill had brought Trey Brown into the business.

The mother of Hill's child, Chasaity Drummond, testified she was at Hill's mother's house picking up her child the morning after the murders. Hill went inside, changed his clothes, and asked Drummond to throw away a bag for him on her way out. Hill cautioned Drummond she should not throw the bag away at her home.

Maxie Wright, a former, long-time boyfriend of Hill's mother, testified Hill told him Mont Brown had threatened to kill Hill's entire family if Hill did not kill the victims. Wright also testified Hill maintained his innocence.

---

[5] "The liquor house was a house located at 18 Chestnut Street in Greenville where visitors gambled, drank, sold drugs, socialized, played video games, and watched television." *State v. Hill*, 382 S.C. 360, 364, 675 S.E.2d 764, 766 (Ct. App. 2009).

The most damaging testimony against Hill was elicited from a police informant, Timothy Paden. Paden testified Hill had confessed to him while they were both in the Greenville County Detention Center. Paden further testified regarding a recording he later made of Paden allegedly confessing to the crime. On cross-examination, Paden refused to answer questions regarding a plea agreement he had made with federal authorities on an apparently unrelated drug charge. The federal authorities discovered Paden had provided false information to them regarding a murder in an effort to have his sentence reduced. Paden told the federal authorities Mont Brown murdered another drug dealer, Andre Rosemond, because Rosemond had kidnapped Mont Brown's wife and child. Paden failed a polygraph examination and confessed to fabricating this story. When his dishonesty was discovered, the federal judge sentenced Paden to twenty years.

The trial court determined the specific details of the violated plea agreement were collateral to Hill's case thus, Hill's right to cross-examine Paden was not impermissibly limited by Paden's invoking the Fifth Amendment on questions relating to the failed agreement and Mont Brown. Furthermore, the State agreed, with some prodding from the trial court, to stipulate Paden had previously provided false information to federal authorities in order to receive a reduced sentence.

Paden answered in the affirmative when asked if he had violated a plea agreement that required his cooperation and his honesty. Furthermore, upon cross-examination, Paden admitted to having criminal convictions of his own and to reporting crimes in exchange for the reward money available through the Crimestoppers program.

*State v. Hill*, 382 S.C. 360, 364–66, 675 S.E.2d 764, 766–67 (Ct. App. 2009).

## APPLICABLE LAW

### Summary Judgment Standard

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." *The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth.*, 597 F.3d 570, 576 (4th Cir. 2010) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). In ruling on a motion for

summary judgment, "the nonmoving party's evidence is to be believed, and all justifiable inferences are to be drawn in that party's favor." *Id.* (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)); *see also Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

### Habeas Standard of Review

Since the Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997); *Breard v. Pruett*, 134 F.3d 615, 618 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams*, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

### DISCUSSION

### Ground One

In Ground One of the Petition, Petitioner argues that his Fourth Amendment rights and statutory rights under S.C. Code § 17-30-80 were violated by Detective Fuller's failure to obtain a court order before wiring Timothy Paden to record the Petitioner.[6] (Dkt. No. 1 at 6.)  The Petitioner has failed to raise a claim upon which habeas relief may be granted.

The Supreme Court of the United States has held "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Stone v. Powell*, 428 U.S. 465, 494 (1976). "*Stone v. Powell...* marked, for most practical purposes, the end of federal court reconsideration of Fourth Amendment claims by way of habeas corpus petitions where the petitioner had an opportunity to litigate those claims in state court." *Grimsley v. Dodson*, 696 F.2d 303, 304 (4th Cir. 1982) (holding that the petitioner in a habeas action could not challenge the search of his residence pursuant to a search warrant under *Stone v. Powell*).  The Petitioner is attempting to challenge the admissibility of Timothy Paden's testimony and the Petitioner's recorded confession under the Fourth Amendment.  The Petitioner had a full trial in state court and had

---

[6] In a later filing with this court, the Petitioner argues that the State had to have a court order under "Title III." (Dkt. No. 40.)  Title III is not applicable to this case. Mr. Paden was a party to the conversation and consented to recording it. *See* 18 U.S.C § 2511 ("It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception."). Additionally, a petitioner may not raise new claims in his opposition to summary judgment. *See Jones v. McFadden*, No. 814-CV-04556-RMG-JDA, 2016 WL 825394, at *14 (D.S.C. Jan. 15, 2016), *report and recommendation adopted*, 2016 WL 827756 (D.S.C. Mar. 2, 2016) ("To the extent that Petitioner is attempting to raise new arguments in his response in opposition, new matters cannot be raised in a response in opposition to a motion for summary judgment,...and the Court will not address these arguments.") (citing *Temple v. Oconee County*, No. 6:13cv-144-JFA-KFM, 2014 WL 4417702, at *3 (D.S.C. Sept. 8, 2014); *White v. Roche Biomedical Labs.*, 807 F. Supp. 1212, 1216 (D.S.C. 1992)).

ample opportunity to litigate any Fourth Amendment challenge in the state trial and appellate courts.

As to the Petitioner's arguments that Detective Fuller did not comply with S.C. Code § 17-30-80, claims of violation of a state law are not cognizable under 28 U.S.C § 2254..  Section 2254 states that this court "shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).  "[W]hen a petitioner's claim rests solely upon an interpretation of state case law and statutes, it is not cognizable on federal habeas review." *Weeks v. Angelone*, 176 F.3d 249, 262 (4th Cir. 1999), *aff'd,* 528 U.S. 225 (2000) (citing *Estelle v. McGuire,* 502 U.S. 62, 67–68, (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.")).  Therefore, the Petitioner's claim that Detective Fuller violated S.C. Code § 17-30-80 is not cognizable.[7]

**Ground Two**

In Ground Two of the Petition, Petitioner argues that his Fifth and Fourteenth Amendment rights to due process of law and his statutory rights under S.C. Code § 16-9-10(a)(1)[8] were violated when "numerous state witnesses were allowed to commit perjury" and

---

[7] Even if the Petitioner's claim was cognizable, his reliance on S.C. Code § 17-30-80 would be in error.  Section 17-30-80 addresses applications for the interception of communications under South Carolina law. The Petitioner was recorded in conversation with Mr. Paden. "It is lawful under this chapter for a person acting under color of law to intercept a wire, oral, or electronic communication, where the person is a party to the communication or one of the parties to the communication has given prior consent to the interception." S.C. Code § 17-30-30(b).

[8] S.C. Code § 16-9-10 is the South Carolina criminal statute for perjury and subordination of perjury.

the solicitor knowingly allowed the testimony. (Dkt. No. 1 at 8.)  The Petitioner has failed to

raise a claim upon which habeas relief may be granted.

The Petitioner did not raise this argument before the PCR court but did raise that his trial

counsel was ineffective for failing to object to the perjured testimony.  The PCR court ruled as

follows:

> This Court finds the Applicant failed to meet his burden of proving trial counsel
> should have argued the State's witnesses perjured themselves. Trial counsel noted
> there were discrepancies between statements and testimony for several State
> witnesses. This Court has reviewed the trial transcript and finds trial counsel
> thoroughly cross-examined State witnesses about inconsistencies in their testimony.
> As the Applicant failed to demonstrate these witnesses willfully provided false
> testimony, this Court finds there was no basis for trial counsel to have brought up the
> issue of perjury. See S.C. Code Ann. § 16-9-10(A)(l) (2003). This Court notes the
> jury determined the credibility of the witnesses at trial. *See State v. Pipkin*, 359 S.C.
> 322, 327, 597 S.E.2d 831, 833 (Ct. App. 2004) (noting the jury is "the finder of fact
> and weigher of credibility"). It is clear that, regardless of trial counsel's strong cross-
> examination, the jury accepted the State's theory of the case. *See Craven v.
> Cunningham*, 292 S.C. 441, 443, 357 S.E.2d 23, 25 (1987) ("The credibility of
> witnesses is for the triers of fact.").

(Dkt. No. 21-7 at 122.)

Assuming *arguendo* that this claim is exhausted and properly before this court, the

Petitioner has failed to demonstrate that the PCR court's ruling was contrary to any clearly

established federal law or was based on an unreasonable determination of the facts in light of the

evidence presented.  The Petitioner has not named any witness that he alleges committed perjury

or the content of the alleged perjured testimony. Conclusory allegations that the State's witnesses

committed perjury are insufficient to warrant habeas relief.  *Boan v. Warden of Lee Corr. Inst.*,

No. 2:11-CV-02078-RBH, 2012 WL 4069682, at *6 (D.S.C. Sept. 17, 2012) (citing *United

States v. Griley,* 814 F.2d 967, 971 (4th Cir.1987) ("Mere inconsistencies in testimony by

government witnesses does not establish the government's knowing use of false testimony.")).

To the extent the Petitioner is arguing that his state statutory rights were violated. his claims is not cognizable as discussed *supra.*

## Ground Three

In Ground Three of the Petition, Petitioner argues that his Fifth and Fourteenth Amendment rights to due process of law were violated because he is actually innocent of the crimes and there is no evidence linking him to the crimes except the "tainted evidence" of his conversation with Timothy Paden.  This court has already concluded that the Petitioner's claims regarding Mr. Paden and the recording are barred by *Stone* or not cognizable under § 2254. The Petitioner does not claim any newly discovered evidence, but rather that he is innocent of any crime.

"Whether a freestanding claim of actual innocence is cognizable in a habeas action unaccompanied by an assertion of an independent constitutional violation remains unsettled in the Fourth Circuit." *United States v. Hawkins*, No. 2:10-CR-0004-1, 2015 WL 7308677, at *8 n.16 (W.D. Va. Nov. 19, 2015) (citing *Royal v. Taylor*, 188 F.3d 239, 243 (4th Cir. 1999)). "[T]he threshold for any hypothetical freestanding innocence claim [is] 'extraordinarily high.'" *House v. Bell*, 547 U.S. 518, 555 (2006) (quoting *Herrera v. Collins*, 506 U.S. 390, 417 (1993)). The implied test for such a claim "requires more convincing proof of innocence than *Schlup*." *Id.* In *Schlup*, the Supreme Court held that a credible claim of actual innocence accompanied by a constitutional error "requires petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

As an independent actual innocence claim unaccompanied by a constitutional claim has not been held to be cognizable, Petitioner's claim is most likely barred. However, even if such a claim may stand under section 2254, Petitioner has not met his burden under *House*. As summarized by the South Carolina Court of Appeals on his direct appeal, evidence was presented at trial showing the Petitioner was guilty of the crimes. *State v. Hill*, 382 S.C. 360, 364–66, 675 S.E.2d 764, 766–67 (Ct. App. 2009). The Petitioner's argument that his recorded confession cannot be used because it is tainted is not persuasive because the statute he relies on does not apply to the facts in this case. Therefore, to the extent an independent actual innocence claim unaccompanied by a constitutional claim may be cognizable, the Petitioner has not met his burden.

## **RECOMMENDATION**

Accordingly, the undersigned magistrate judge **RECOMMENDS** that the Respondent's Motion for Summary Judgment (Dkt. No. 22) be **GRANTED.**

**IT IS SO RECOMMENDED.**

January 24, 2017

Charleston, South Carolina

MARY GORDON BAKER
UNITED STATES MAGISTRATE JUDGE

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

**Robin L. Blume, Clerk**
**United States District Court**
**Post Office Box 835**
**Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).